IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANE DOE                                    *

    Plaintiffs,                          *

                                         Civil No. TJS-22-1915

           v.                          *

MARTIQUE VANDERPOOL, *et al.*,    *

    Defendants.                          *

            *     *     *     *     *     *

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff Jane Doe's Motion for Sanctions for the Defendant Town of Fairmount Heights' Spoliation of Evidence or to Compel Fairmount Heights to Submit to Limited Discovery Regarding Missing Documents ("Motion") (ECF No. 91).[1] Defendant Fairmount Heights opposes the Motion. ECF No. 96. Having considered the submissions of the parties (ECF Nos. 91, 96 & 98), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons set forth below, Doe's Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

On September 6, 2019, Plaintiff Jane Doe was pulled over in her car by former Fairmount Heights police officers Defendants Martique Vanderpool and Philip Dupree. Plaintiff alleges that she was then arrested, detained at a police precinct, and sexually assaulted by Defendant Vanderpool. ECF No. 1 at 2. On January 21, 2020, Vanderpool was indicted in state court in connection with the incident. *Id.* at 5. About seven months later, on August 27, 2020, Plaintiff sent

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 44.

a Notice of Claim to JoAnn Tucker (Fairmount Heights Town Clerk), Doris Sarumi (Fairmount Heights Town Manager), and Lillie Thompson Martin (Fairmount Heights Mayor). ECF No. 91-6. On August 8, 2022, Plaintiff filed the present suit against Vanderpool and Dupree, as well as former Chief of Police of the Fairmount Heights Police Department Stephen Watkins, and the Town of Fairmount Heights. ECF No. 1. Of import to the pending Motion, Plaintiff's claims against Fairmount Heights include (1) violation of the Maryland Declaration of Rights by Vanderpool and Dupree, for which she alleges Fairmount Heights is liable because Vanderpool and Dupree were acting within the scope of their employment; (2) a federal custom or policy claim under 42 U.S.C. § 1983 ("*Monell* claim"); and (3) a state pattern or practice claim ("*Longtin* claim"). *Id.* at 22-30. Plaintiff also brought a federal supervisory claim under 42 U.S.C. § 1983 against Watkins. *Id.*

Discovery has been ongoing for nearly a year. *See* ECF No. 65. The deadlines set in the initial scheduling order have been extended three times. ECF No. 73 (extending discovery deadlines by 120 days); ECF No. 83 (extending the deadline for Plaintiff's Rule 26(a)(2) disclosures and all remaining deadlines by 60 days); ECF No. 93 (extending the dispositive pretrial motions deadline by 29 days). Per the most recent modified scheduling order, the discovery deadline was September 30, 2024. ECF No. 83.

In the present Motion, Plaintiff alleges that she received an initial production of documents from Fairmount Heights on January 29, 2024. ECF 91.1 at 2. Plaintiff states that she received piecemeal responses to her document requests throughout the course of discovery. *Id.* After deposing several witnesses, Plaintiff grew concerned that Fairmount Heights had not produced relevant documents that she believed to exist. She expressed these concerned to Fairmount Heights, but the documents were never produced. *Id.* at 3.

Plaintiff filed the Motion on September 30, 2024. ECF No. 91. She alleges that Fairmount Heights is responsible for spoliation of (1) Vanderpool and Dupree's personnel files, (2) the email accounts of several former Fairmount Heights police officers and former Town Council members, and (3) emails related to Town Council business that were sent to or from the former members' private email accounts. Plaintiff seeks limited discovery regarding the missing documents and a negative inference jury instruction regarding the contents of Vanderpool's and Dupree's personnel files and the missing emails. ECF No. 91.

## II.    Legal Standard

A party's "destruction or material alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" may amount to spoliation. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). To impose sanctions for spoliation, a party must show,

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Membreno v. Atlanta Restaurant Partners, LLC*, 338 F.R.D. 66, 71 (D. Md. 2021). "This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse jury instruction." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008).

### A.    Duty to Preserve Potentially Relevant Evidence

The first element that a party seeking spoliation sanctions must prove is a duty to preserve the potentially relevant evidence. "The duty to preserve evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the

evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009); *see also First Mariner Bank v. Resolution Law Group, P.C.*, No. MJG-12-1133, 2014 WL 1652550, at *8 (D. Md. Apr. 22, 2014). This duty includes the duty to preserve

> any documents or tangible things (as defined by [Fed. R. Civ. P. 34(a))] made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman*, 632 F. Supp. 2d at 511-12.

## B.    Culpability

The second element that the moving party must prove is culpability. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Turner v. United States*, 736 F.3d 274 (4th Cir. 2013) (citing *Victor Stanley*, 269 F.R.D. at 529). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D. W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*,

4

632 F. Supp. 2d at 520, willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

### C.    Relevance and Prejudice

The third element that a party must prove to prevail on a motion for spoliation sanctions is that the spoliated evidence is relevant to her claim. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence 401." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* "Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice." *Id*. A party is prejudiced by the spoliation of evidence where the party's ability to present its case is compromised as a result of the missing evidence. *Id.* (noting that "[p]rejudice can range along a continuum from an inability to prove claims to little or no impact on the presentation of proof") (internal quotation omitted).

The party seeking sanctions has the burden of establishing "a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Sampson*, 251 F.R.D. at 179 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Co. 1996). When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, "the relevance of that evidence is presumed in the Fourth Circuit." *Victor Stanley*, 269 F.R.D. at 532. Even where the relevance of spoliated evidence is presumed, however, "the spoliating party

may rebut this presumption by showing that the innocent party has not been prejudiced." *Id.* (internal quotation omitted).

## III.    Discussion

### A.    Fairmount Heights Breached its Duty to Preserve the Personnel Files and the Email Accounts.

#### 1.    Fairmount Heights' Had a Duty to Preserve Potentially Relevant Evidence Attached When Watkins Reported the Incident Soon After September 6, 2019.

The sexual assault that gave rise to Plaintiff's complaint occurred on September 6, 2019. Plaintiff alleges (and Fairmount Heights does not dispute) that Defendant Watkins "became aware of the incident within a couple days after the assault and soon shared this information with the Fairmount Heights Town Manager (Doris Sarumi), as well as Lieutenant Ivey." ECF No. 91-1 at 18. Vanderpool was charged in state court in December 2019, and the indictment garnered significant public attention. *Id.* Fairmount Heights received a tort claims notice ("Notice Letter") from Plaintiff on August 27, 2020. ECF No. 91-6. The Notice Letter stated,

> Please be advised . . . that [Ms. Doe] will pursue any and all legal remedies available to her against Fairmount Heights Police Department and The Town of Fairmount Heights by and though its employees, for this incident, including assault and battery, rape, and violation of her constitutional rights.
> In addition to the violations outlined above by the two officers, there was a lack of institutional control that allowed this to occur and claims brought may include failure to properly monitor police station which allowed a rape to occur on the premises itself, and failure to properly supervise these two officer employees. Also, claims of negligent retention of these two officers may be brought.

ECF No. 91-6. Plaintiff filed her Complaint on August 2, 2022. ECF No. 1.

In Plaintiff's view, Fairmount Heights was put on notice of her potential litigation when it first learned of the assault from Watkins or, in the alternative, when Vanderpool was indicted. Fairmount Heights argues that it was not put on notice of Plaintiff's claims until Plaintiff filed the Complaint. ECF No. 96 at 5. It asserts that even the Notice Letter was not sufficient to trigger an

obligation to preserve the evidence in dispute because the letter did not specifically state that Ms. Doe would raise pattern and practice claims, supervisory liability claims, claims under *Monell* and *Longtin*, or claims related to the actions of Defendant Watkins. *Id.*

Fairmount Heights' argument that it could not reasonably anticipate a *Monell* or *Longtin* claim or a claim premised on supervisory liability after receiving the Notice Letter is entirely without merit. The Notice Letter referred to "a lack of institutional control," "failure to properly monitor police station," "and "failure to properly supervise [Vanderpool and Dupree]." The Notice Letter makes clear that Plaintiff intended to pursue a claim against Fairmount Heights and its employees based on supervisory liability. Litigants frequently use *Monell* claims when bringing civil rights claims against local governments and agencies, and the language of the Notice Letter reasonably put the Town on notice that Plaintiff would assert such a claim. Thus, Fairmount Heights should have reasonably anticipated this litigation no later than August 27, 2020, when it received the Notice Letter.

But Fairmount Heights should have reasonably anticipated Plaintiff's litigation even before receiving the Notice Letter. Fairmount Heights knew about Vanderpool's misconduct on September 6, 2019, through internal reports, a criminal indictment, and press coverage. As Plaintiff pointed out, "Any reasonable municipality should know that, when one of its police officers arrests a woman and then rapes her at city hall, it should expect to be sued." ECF No. 98 at 2. But if that was not sufficient, the Town Manager Dorris Sarumi admitted in her deposition that she and Watkins were aware even before September 6, 2019, that Vanderpool "had a practice of extorting sex from people he pulled over in exchange for the return of their vehicles." ECF No. 98 at 2. Watkins also wrote to Prince George's Police Department ("PGPD") on September 17, 2019, asking them to investigate "a possible *scheme* that involves the impounding of *vehicles* during a traffic stop and

releases them without monetary cost, but possibly receiving sexual favors in return." *Id.* (emphasis added). Fairmount Heights therefore had actual notice of a possible pattern or practice of the constitutional violations that underpin Plaintiff's Complaint.

Finally, Fairmount Heights took action to address what it clearly recognized as institutional shortcomings related to the incident. Watkins was fired from the Fairmount Heights Police Department in January 2020.[2] ECF No. 91-1 at 18-19. Patricia Ukkundo'Oowaka, the Town Council liaison to the Fairmount Heights Police Department, was likewise asked to step down from her role sometime between the sexual assault and March 2020 "as a result of her handling of the role leading up to and during this incident [involving Vanderpool and Plaintiff]." *Id.* at 9.

Looking at all the facts, the Court finds that the Town of Fairmount Heights had a duty to preserve evidence that was potentially relevant to Plaintiff's claims, including her "pattern or practice" and supervisory liability claims, beginning no later than January 2020, which is when the Town began taking action to remedy what it apparently recognized as institutional failures. The Town had a duty to preserve evidence that was potentially relevant to Plaintiff's claims against Vanderpool and Dupree beginning when it became aware of the incident, i.e., when Watkins reported the incident to the Town Manager and Lieutenant Ivey in September 2019.

### 2. Fairmount Heights Breached its Duty to Preserve Potentially Relevant Personnel Files.

Fairmount Heights turned its only copy of Vanderpool and Dupree's personnel files over to PGPD investigators during PGPD's criminal investigation into Vanderpool's sexual assault of Plaintiff. *Id.* at 6. However, Fairmount Heights did not retain a copy of the personnel files, and PGPD intermingled the personnel files with other documents upon receiving them, so Plaintiff

---

[2] Fairmount Heights characterized Watkins' departure as a resignation. ECF 96 at 5.

alleges that the original contents are no longer ascertainable. *Id.* In response to discovery requests, Fairmount Heights provided Plaintiff a copy of the PGPD investigators' records, which Plaintiff used to depose Watkins. *Id.* Watkins stated during his deposition that he expected other documents to be present in the personnel files, but they were not in the file produced by Fairmount Heights. ECF No. 98 at 8. Town Manager Doris Sarumi likewise described personnel documents that were missing from the copy of the files produced. *Id.*

After PGPD's investigation was complete, PGPD returned Fairmount Heights' files to the town. ECF No. 91-1. at 7. In February 2024, Fairmount Heights then turned the documents over to the Department of Justice in connection with the federal prosecution of Vanderpool. *Id.* However, Fairmount Heights once again failed to make a copy of the documents. *Id.* In May 2024, Fairmount Heights produced to Plaintiff a copy of Vanderpool and Dupree's personnel documents that the Department of Justice ("DOJ") had obtained from Fairmount Heights, which counsel for Fairmount Heights had received from the U.S. Attorney's Office. *Id.* Importantly, this version of the personnel file contains documents that were different from and additional to those included in the PGPD copy. Plaintiff alleges that one document in particular "would likely be part of Dupree's personnel file": a memorandum stating the Town's intention to terminate Dupree's employment. *Id.* at 7-8. The discrepancies between PGPD and DOJ's copies of the personnel files raised Plaintiff's suspicions that other documents may have been lost or destroyed.

Fairmount Heights claims that it does not have a copy of the original personnel files, nor does it have a record of who turned the original files over to PGPD or when this occurred. ECF No. 91-4. It also does not have a record of whether the files were in the same condition when they were returned by PGPD. *Id.* By the time of PGPD's investigation, which began sometime after Watkins reported the assault in September 2019, the Town should have at the very least reasonably

anticipated Plaintiff's litigation against Dupree and Vanderpool. And by the time that Fairmount Heights provided the files to DOJ, which was sometime after October 29, 2020, the Town was also on notice of Plaintiff's claims against Watkins and Fairmount Heights. ECF No. 91-4 at 2.  Despite this, Fairmount Heights failed to preserve the personnel records, which an objectively reasonable person would know were potentially relevant evidence. Therefore, the Court finds that Fairmount Heights breached its duty to preserve potentially relevant evidence with respect to Vanderpool and Dupree's personnel files.

### 3. Fairmount Heights Breached it Duty to Preserve Potentially Relevant Email Accounts.

Former Fairmount Height police officers Vanderpool, Dupree, Watkins, and Ivey were each issued official email accounts by the Fairmount Heights Police Department. ECF No. 91-1 at 13. They used these email accounts to conduct their work for Fairmount Heights. *Id.* However, in response to a request for relevant police department emails, Fairmount Heights failed to produce any emails from Vanderpool's or Dupree's accounts. And the Town only produced a few emails from Watkins' and Ivey's accounts. *Id.* The reason that Fairmount Heights was unable to produce emails from these accounts is that the accounts had all been deleted (along with their contents) when each of the officers was terminated. Because the officers' emails had been deleted, Fairmount Heights was only able to produce emails located in current employees' email accounts. *Id.*; ECF No. 91-1 at 13. Plaintiff's concerns about the emails that Fairmount Heights deleted are not speculative. DOJ's files contained screenshots of emails sent from Vanderpool's, Watkins', and Ivey's Fairmount Heights email addresses on matters responsive to her document requests that had not been produced by Fairmount Heights. *Id.*

Vanderpool's email account was deactivated and deleted in November 2019, which was after the Town became aware of the incident and at a time when it should have reasonably

10

anticipated Plaintiff's claims against Vanderpool. Dupree's email account was deleted in late 2020. Ivey's email account was destroyed in June 2022. ECF No. 98 at 12. It is not clear when Watkins' email account was deleted, but it was sometime after his departure in January 2020. Dupree, Ivey, and Watkins' emails were all deleted after January 2020, when Fairmount Heights should have reasonably anticipated Plaintiff's claims of supervisory liability. Therefore, the Town's destruction of these former police officers' email accounts was a breach of Fairmount Heights' duty to preserve potentially relevant evidence.

Glenn Morris and Patricia Ukkundo'Oowaka were Town Council members on September 6, 2019 (the date of Plaintiff's sexual assault). ECF No. 91-1 at 9. Ms. Ukkundo'Oowaka was the Police Liaison to the Fairmount Heights Police Department at the time. *Id.* Mr. Morris took over as Police Liaison after Ms. Ukkundo-Oohwaka. *Id.* Both Mr. Morris and Ms. Ukkundo-Oohwaka's email accounts were destroyed in March 2022, after they left office, and no backups were saved. ECF No. 98 at 12. By March 2022, Fairmount Heights had ample notice of Plaintiff's complaint, including receipt of the Notice Letter on August 27, 2020. The Town's destruction of Ukkundo'Oohwaka and Morris's email accounts was therefore a breach of its duty to preserve potentially relevant evidence.

Some council members also used their personal email accounts to conduct Town Council business. *Id.* Plaintiff alleges that Fairmount Heights was aware of this practice because the Town Council members communicated with other Fairmount Heights officials from their personal emails. *Id*. Mr. Morris stated in his deposition that he no longer has those emails because he has "traded phones several times and things have been deleted." *Id.* at 11. Ms. Ukkundo-Oohwaka stated in her deposition that she deleted all the emails in her personal account related to Fairmount Heights. *Id.* at 12 ("I trashed and I just got rid of any and everything Fairmount Heights"). Even

assuming that emails from these personal accounts were deleted after the time when Fairmount Heights was aware of the prospect of litigation, the deletion cannot be imputed onto Fairmount Heights. Fairmount Heights never possessed the council members' personal emails and the former council members deleted them after leaving office. Accordingly, the Court cannot find that Morris and Ukkundo'Oohwaka's destruction of their emails is imputed onto Fairmount Heights as spoliation of evidence.[3]

### B.    Defendants Acted Negligently with Respect to the Lost Personnel Files and Willfully with Respect to the Deleted Official Email Accounts.

The culpability requirement is satisfied where Vanderpool and Dupree's personnel records are concerned. An ordinarily prudent person would have retained copies of the original files before turning them over to PGPD and DOJ. An ordinarily prudent person also would have maintained records detailing who was responsible for handling the documents and the date when they were transferred out of Fairmount Heights' possession. *See Eller v. Prince George's Cty. Pub. Sch.*, No. TDC-18-3649, 2020 WL 7336730, at *8 (D. Md. Dec. 14, 2020) (finding that a defendant's loss of evidence was grossly negligent where a low-level employee lost or destroyed the evidence in contravention of an official policy that such documents be maintained); *Equal Employment Opportunity Comm'n v. Performance Food Grp., Inc.*, No. CCB-13-1712, 2019 WL 1057385, at *6 (D. Md. Mar. 6, 2019) (finding that a "defendant's failure to implement any measures to ensure that potentially relevant evidence would be preserved constituted at least ordinary negligence"). Fairmount Heights neither retained copies of the files nor maintained records of how the

---

[3] Plaintiff argues that Fairmount Heights had a duty to warn Morris and Ukkundo'Oohwaka not to delete potentially relevant emails. ECF No. 91 at 11-12. However, Plaintiff has not presented sufficient evidence to demonstrate that Fairmount Heights knew that these email accounts contained potentially relevant evidence. Moreover, Fairmount Heights' failure to warn the former Town Council members would amount to ordinary negligence at most, and Plaintiff has failed to meet her burden to show that she was prejudiced by this instance of spoliation.

documents were handled. Still, there is no evidence that Fairmount Heights' failure to preserve the personnel records was deliberate, intentional, or purposeful. The Court therefore finds that Fairmount Heights' failure to locate and preserve the personnel files while they were in the Town's control was ordinary negligence.

Fairmount Heights also acted with a culpable state of mind where the deleted email accounts are concerned. Fairmount Heights deliberately, intentionally, and purposefully deleted the email accounts of Vanderpool, Dupree, Watkins, Ivey, Morris, and Ukkundo'Oohwaka. An objectively reasonable person in Fairmount Heights' position would have taken steps to preserve these accounts. The accounts were deleted soon after Fairmount Heights learned of the alleged misconduct and at a time when it should have anticipated litigation. And the accounts belonged to former employees and officers involved in the September 6, 2019 incident and the investigation that followed. Given the timing and potential importance of these custodians' email accounts, Fairmount Heights had a duty to preserve them. Still, Fairmount Heights destroyed the email accounts and their contents. *See Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 821 (E.D.N.C. 2008), *objections overruled*, No. 4:06-CV-117-F(2), 2009 WL 863348 (E.D.N.C. Mar. 27, 2009) (finding that a defendant's destruction of evidence was willful where documents were "deliberately destroyed" and explaining that there was "no evidence suggesting that defendant's destruction of the work orders was negligent, such as the result of failure by an employee to follow instructions not to destroy them") (citing *Buckley*, 538 F.3d at 323).

Fairmount Heights argues that it was merely acting in accordance with its usual business practice in deleting the accounts of its former employees and officials. ECF No. 98 at 5. However, Fairmount Heights had a duty to place a litigation hold on potentially relevant evidence, even if it was not its ordinary practice to do so. And it had the ability to preserve such email accounts, as is

evidenced by the fact that it archived at least two other email accounts that belonged to similarly situated individuals (former Mayor Lillie Thompson Martin and former Town Council member Jacqueline Wood Dodson). ECF No. 91-1 at 10. Plaintiff has not demonstrated, however, that Fairmount Heights acted with the intent to deprive her of the evidence. There is no evidence, direct or circumstantial, that Fairmount Heights deviated from its normal practices to delete these emails, nor is there evidence that it complied with its normal practices in order to keep the emails out of the hands of future litigants. Therefore, this Court finds that Fairmount Heights' destruction of Vanderpool, Dupree, Watkins, Ivey, Morris, and Ukkundo'Oohwaka's emails was willful.

D.    **Relevance and Prejudice**

1.    **The personnel files are relevant to Plaintiff's claim, and Plaintiff is prejudiced by their spoliation.**

Because Fairmount Heights' failure to preserve the personnel records was merely negligent, Plaintiff carries the burden of establishing that the spoliated documents contained relevant evidence and that she has been prejudiced by their spoliation.

As Plaintiff notes, Vanderpool and Dupree's personnel files can be used "to demonstrate what supervisors knew, when they knew it, and how they responded to that knowledge." ECF No. 91-1 at 6. *See Shaw v. Straud*, 13 F.3d 781 (4th Cir. 1994) (holding that personnel files are of the sort typically used in *Monell* and supervisory liability claims). And the relevance of the missing documents is not attributable to "fertile imagination" as Fairmount Heights argues.  The memo discovered in the DOJ file stated that the Town intended to terminate Dupree's employment due to Dupree's misconduct, including misconduct of a sexual nature, some of which involved Vanderpool. ECF No. 91-5. This document, which should have been in the personnel files, is exactly the type of evidence Plaintiff could use to establish what Fairmount Heights and Watkins knew of Vanderpool and Dupree's misconduct, when they knew it, and how they responded to it.

14

The DOJ records are also missing complete personnel files. With evidence from the Sarumi and Watkins depositions, Plaintiff has established that the discovery produced to date does not include certain documents that would have been in Defendants' personnel files. There are no exact copies of the original personnel records and there is no person who is able to accurately testify to their original contents. Plaintiff is prejudiced by this spoliation because personnel files are particularly probative to her type of claim, and she has no means of knowing what was in the original records. *See Membreno*, 338 F.R.D. 791 (holding that the party was prejudiced by spoliation of personnel files because personnel files are "a particularly probative means" for proving discrimination).

### 2. The emails are relevant to Plaintiff's claims, and she is prejudiced by their spoliation.

Because Fairmount Heights willfully destroyed Vanderpool, Dupree, Watkins, Ivey, Ukkundo'Oohwaka, and Morris's email accounts, the relevance of those accounts is presumed. *Victor Stanley*, 269 F.R.D. at 532. Fairmount Heights may rebut the presumption by showing a lack of prejudice, but it has failed to do so here. Given the involvement of these Town employees and officials in the September 6, 2019 incident, it is likely that relevant evidence was contained in the destroyed email accounts. Plaintiff has been prejudiced by this spoliation because she has no way of knowing the contents of the emails or cross-examining the defendants about them. Vanderpool and Dupree's emails could have contained important information about their strategies for carrying out their alleged scheme and avoiding detection. Watkins' and Ivey's emails could have revealed what they knew of the alleged scheme and when they knew it, as well as information regarding their investigation of and response to Plaintiff's assault. Morris and Ukkundo-Oohwaka were members of what former Fairmount Heights mayor, Lillie Thompson Martin described as a "clique" that held "strongly critical views of the police department." ECF No. 91-1 at 9. Their

15

email communications therefore could have contained important evidence regarding police misconduct known to the Town. Of course, there is no evidence that the deleted emails *did* contain this type of information. However, as noted earlier, the burden is on Fairmount Heights to demonstrate lack of prejudice at this stage, and the Town has not met that burden.

### E.    Sanctions

"Spoliation sanctions should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Goodman*, 632 F. Supp. 2d at 523 (internal quotation omitted). Federal courts may impose a number of types of sanctions for spoliation: "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Victor Stanley*, 269 F.R.D. at 533 (citing *Goodman*, 632 F. Supp. 2d at 506). A court must "impose the least harsh sanction that can provide an adequate remedy." *Id.* at 534 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)). Where electronically stored information is concerned, a court must find that a party "acted with the intent to deprive another party of the information's use in litigation" before it may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

In her motion, Plaintiff requests that this Court instruct the jury that it may infer that

if Defendant Fairmount Heights had not failed to maintain the integrity of the personnel files, they would have contained evidence that Fairmount Heights knew or should have known of prior misconduct creating a risk of harm to persons like Doe.

ECF No. 91-1 at 24. She likewise requests that the Court instruct the jury it may infer that

> if Defendant Fairmount Heights had not destroyed the emails for former council members, and failed to instruct former council members to preserve relevant emails sent or received on council member's personal email accounts, the emails would have contained evidence that Fairmount Heights knew or should have known of prior misconduct creating a risk of harm to persons like Doe.

*Id.* Plaintiff requests a similar adverse jury instruction for the spoliated police department emails. In the alternative, she requests that the Court "permit [her] to engage in limited discovery to discern the nature and scope of the search conducted" on those email accounts. *Id.* at 26-28.

An adverse inference jury instruction is inappropriate in this case. Considering all of the evidence and the policy rationales underlying spoliation sanctions, the Court finds that the requested jury instruction is too harsh a remedy for Fairmount Heights' negligent failure to preserve Vanderpool and Dupree's personnel files. When it comes to the deleted email accounts, Plaintiff did not demonstrate that Fairmount Heights destroyed the emails "with the intent to deprive another party of the information's use in the litigation." Without making this showing, an adverse inference instruction is not permitted under Rule 37(e)(2).

Some sanction, however, is warranted. It is the Court's intention to permit Plaintiff to present evidence at trial regarding the original contents of the spoliated personnel files and email accounts. The Court also intends to permit Plaintiff to present evidence that the Town had a duty to maintain the personnel files, former Town Council members' email accounts, and former police officer email accounts, and that it failed to do so. The Court will not instruct the jury on these matters, and the jury will make of the evidence what it will.

The Court declines to allow Plaintiff to engage in additional limited discovery on the spoliation issue. Plaintiff waited until the discovery deadline to seek relief form the Court. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp 2d 494, 508 (D. Md. 2009) (noting the importance of timely filing spoliation motions). Allowing Plaintiff to take additional discovery would lead to

further delay in this case, which the Court will not permit. But more importantly, the Court does not believe that allowing additional discovery would be fruitful. The four former police officers' accounts have been destroyed. See ECF No. 96. Plaintiff has had ample opportunities to conduct discovery on the missing documents. Any additional discovery would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Due to Plaintiff's delay and the fact that discovery has already been ongoing for over a year, Plaintiff's request for limited discovery is denied.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **GRANTED** insofar as it seeks sanctions for Fairmount Heights' spoliation of Vanderpool and Dupree's personnel files, the former Town Council members' official email accounts, and the former police officers' email accounts consistent with this opinion. Plaintiff's Motion is otherwise **DENIED**.

November 22, 2024
Date

/s/
Timothy J. Sullivan
Chief United States Magistrate Judge